UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD BONFILIO<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES ARMY<br>Office of General Counsel of the Army<br>104 Army Pentagon<br>Washington DC  20310—0104<br><br><br>U.S DEPARTMENT OF STATE<br>600 19 St. NW<br>Suite 5600<br>Washington D.C. 20036<br><br>U.S. Office of Personnel Management<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case: 1:25-cv-00007 JURY DEMAND<br>Assigned To : Reyes, Ana C.<br>Assign. Date : 1/2/2025<br>Description: Pro Se Gen. Civ. (F-DECK) |

# COMPLAINT

This is a continuation lawsuit against the executive branch of the United States being transferred into the United States District Court for the District of Columbia[1] from the Merit System Protection Board administrative hearings final decision November 19, 2024. This transfer, is in accordance with the Administrative Procedures Act as required by the executive branch of the U.S. Government.

Accordingly, on information and belief this is not a new lawsuit. It is merely a continuation as the existing lawsuit as an administrative matter, therefore no statute of limitations arguments are appropriate.

---

[1] "U.S. Code § 7703 - Judicial review of decisions of the Merit Systems Protection Board
(b) (1)
(A)Except as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board."

1

RECEIVED
JAN - 2 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

This transfer, is not a change in substance, only an inclusion of two additional executive branch parties: the U.S. Army and the U.S. Department of State, because they were absent, as noted by the Administrative Judge, in the administrative appeal.

"the Department of State and Department of the Army are not parties to this appeal".(Administrative Judge in MSPB's Initial Decision, pg14.

It became apparent during this litigation, OPM, was not the guilty party, rather the United States Army, and the Department of State were guilty parties because of their negligence in failure to provide the required guidance on the effect that of dual compensation and erroneous selection of retirement accounts had denied service in Iraq a "creditable". Therefore, these agencies are Defendants in this law suit.

These two executive agencies played a major role in Plaintiff's damages. Therefore, they are essential to the understanding and outcomes of the events described herein and have been included as parties. Therefore this complaint, now includes the proper executive organizations.

## I. JURISDICTION

At all times during the occurrence of actions and issues in this Complaint, Plaintiff, Ronald Bonfilio was a resident of the District of Columbia.

## II. STANDING TO SUE

Plaintiff suffered economic injury and hardships caused by Defendants, who under laws or regulations failed in their duty to provide required guidance and disclose time served in Iraq, would not be creditable service. Because service was not creditable, it thwarted Plaintiff's objective to complete the required 5 years of uninterrupted service, necessary to recalculate Plaintiff's annuity. If this were disclosed, Plaintiff would not have accepted the position with the U.S. Army and continue employment with the National Institutes of Health (NIH) for 13 months to complete 5 years of uninterrupted service.

Plaintiff would then qualify for a recalculation of annuity, resulting in a substantial increase in income, because it would be based on the average salary of $80,000 for the top 3 year salaries at NIH, instead of the previous calculation based on an average 3 year salary of $48,414 at the U.S.. General Accounting Office.

This failure by government agencies to provide the required guidance resulted in economic damage to Plaintiff: an income loss of about $450,000.

## III. BACKGROUND

Plaintiff has a lifetime of federal service with the U.S. General Accounting Office, National Institutes of Health, U.S. Agency for International Development (AID). U.S. Department of State and the U.S. Army. The State Department's position was in Iraq. The AID's position was in Vietnam. Both positions were under wartime conditions.

Plaintiff retired from the U.S. General Accounting office on or about 1993. In 2006, Plaintiff became a reemployed annuitant and served about 4 years at the National Institutes of Health and needed about 1 more year to complete 5 years of uninterrupted service. After 5 years of service, Plaintiff would be eligible for a recalculation of his annuity.

To complete the remaining year, Plaintiff accepted positions as a reemployed annuitant in Iraq with a U.S. Army component, the Special Inspector General for Iraq Reconstruction (SIGIR). Herein referred to as "SIGIR". Subsequent to that one year appointment, he accepted a position with the U.S. Department of State in Iraq for more than a year.

Upon return to the United States in 2009, Plaintiff requested the Office of Personnel Management, (OPM) to recalculate his annuity. After considerable correspondence, delays and appeals with OPM, OPM denied the recalculation of the annuity based upon service in Iraq was not creditable service. This was because Plaintiff was receiving dual compensation (his annuity and salary). Plaintiff then appealed to the Merrit System Protection Board (MSPB) which also denied Plaintiff request . The MSPB in its final decision denied Plaintiff's claim.

## IV. STATEMENT OF FACTS

### A. The U.S. Army Recruitment

#### (1) Difficulties in Recruitment

During this unpopular war, the U.S. Army's, Special Inspector General for Iraq Reconstruction (SIGIR) was having exceptional difficulty in recruiting qualified employees. This was demonstrated by:

- o SIGIR offering high salaries for inducement. Plaintiff declined SIGIR's initial offer and asked for a substantial increase. The increase was granted.

- o The SIGIR recruiter added another financial inducement: Plaintiff did not need to offset his annuity while employed. There was no mention of any penalty for this dual

3

compensation.

- o SIGIR, later offering 20%-30% higher salaries to new recruits, with substantially less qualifications than Plaintiff.

- o Many Program Analysts/Auditors recruited, had no Program Analyst or Auditor experience. Only 3 of about 20 staff had experience. Only about 2 of the staff knew the difference between an authorization and appropriation bill.

- o The challenging living conditions in Iraq. SIGIR personnel were subjected to mortar fire at night. A Plaintiff's coworker's housing trailer was stuck by a mortar. Fortunately, he survived.

- o The Department of Defense policy on hiring annuitants.[2]

**(2) SIGIR's Recruitment Interview**

The SIGIR recruiter briefly explained the job description and offered a salary which included the retention of the annuity. Plaintiff conveyed this information to his daughter that this would increase his annuity because of the higher salaries received in Iraq (Exhibit C attached). Nothing more of substance was said by SIGIR's recruiter. There was no guidance that service in Iraq, would not be creditable service because of dual compensation. There was no guidance of which retirement account should be needed and selected for an annuity recalculation.

Because the U.S. SIGIR experienced difficulties recruiting personnel for Iraq assignments, made attractive employment offers to recruits, which included high salaries, and dual

---

[2] "4. POLICY. It is DoD policy that:
 a. Reemployed annuitants shall be used, as needed, to support mission requirements….
 b. Annuitants should be hired to meet critical mission needs… to reemploy an annuitant include but are not limited to:
  (1) A position is hard to fill as evidenced by historically high turnover, a severe shortage of candidates, or other significant recruiting difficulty.
  (2) A position is critical to accomplish the organization's mission or to complete a specific project or initiative.
…This authority to appoint annuitants shall (3) An annuitant has unique or specialized skills or unusual qualifications not generally available." Department of Defense INSTRUCTION NUMBER 1400.25, Volume 300 December 10, 2008

compensation. SIGIR hastily completed droves of forms, and paperwork necessary for employment with little if any explanation.

### B. The U.S. Department of State's Recruitment Actions

#### (1) Difficulty in Recruitment

Upon finishing the tour with SIGIR, without a break in service, Plaintiff accepted a position as a Senior Economic Advisor with the joint military and civilian Provincial Reconstruction Team (PRT) in in Diyala Province. This province was the center of Al Quida activity and considered the most dangerous province in Iraq[3]. The PRT was comprised of about 10 civilians. Difficulty in recruitment is based on the following:

(a) On information and belief, 4 persons, with limited qualifications. were paid about $500,000 per year. One of which was a Senior Economic Advisor at the PRT, who had no or limited experience in economics.

(b) The quality of personnel.

Dismissal of another Senior Economic Adviser coworker.

Because Plaintiff was a member of the Economics Honor Fraternity, had an Economics degree. a Master's in Business Administration, and considerable business experience, that another Senior Economic Advisor mentioned, became hostile. He said to Plaintiff:

" You should be waterboarded".

Because of this, he was advised to have "counseling". and eventually dismissed.

(c) The difficulty in recruiting needed agricultural advisors. One Agriculture Advisor was incompetent and had social issues and was fired.

(d) Plaintiff, with no education or agriculture experience, became an Agriculture Advisor.

---

[3] A coworker's description:
"It is pretty rough up there…of all the bases that is the worst in country… A lot of kinetics… and it is the last strong hold of al-Qaeda. They are rocking and rolling there."

5

(e) Living and work conditions were challenging. PRT personnel worked 12 hour days, usually 6 or 7 days a week, in dusty makeshift plywood offices.

(f) An Agriculture Specialist from the U.S. Department of Agriculture (USDA), estimated SIGIR and the State Department had less than 3% qualified agricultural advisors in Iraq.

(g) The USDA advised an employee in Washington, DC to serve in Iraq or retire.

(h) A young woman, working for the State Department was dismissed when she pulled a knife on a coworker.

(i) U.S. Army Civil Affairs soldiers, were being assigned as agriculture advisors to the PRT with little, if any had education or experience in agriculture.

(j) It took more than a year to find a replacement Agricultural Advisor at the PRT.

(k) A new employee, who was to work with at the PRT, when arriving, stepped off a helicopter, and try to walk and free herself from the suction of the mud, exclaimed angrily:

"I'm not working here!".

She got back on the helicopter and departed.

(l) the U.S. Department of State included a remark in its SF 50 that waived the dual compensation reduction of rules surrounding reemployed annuitants,

" A waiver of the dual compensation reduction was approved by the Director General of the Foreign Service and Director of Human Resources 11/21/07"

*A waiver of the dual compensation reduction was approved by the Director General of the Foreign Service and Director of Human Resources on 11/21/07.

**(2) The Department of State's recruitment interview.**

Because of the State Department's difficulty in recruiting qualified personnel, the Department of State resorted to intentional or unintentional deceptive actions.

As with the SIGIR, the State Department neglected to inform Plaintiff, the appointment would not be creditable service. No guidance was given on choosing retirement accounts or penalties upon receiving dual compensation. during the few minutes necessary to complete forms to accept employment by the Department of State.

## V.  ARGUMENT AGAINST

### U.S. ARMY - SIGIR AND THE U.S. DEPARTMENT OF STATE,

**A.** Because both agencies had extreme difficulty in recruiting and retaining qualified civilian personnel for positions they hired reemployed annuitants <u>with dual compensation</u>

According to DoDI 1400.25-V300, December 10, 2008, 4. POLICY:

> "4. POLICY. It is DoD policy that:..
>
> "b. Annuitants should be hired to meet critical mission needs. Such appointments should be carefully considered keeping in mind the Department's need to ensure a steady pipeline of leadership talent. Circumstances in which it may be appropriate to reemploy an annuitant include but are not limited to:
> (1) A position is hard to fill as evidenced by historically high turnover, a severe shortage of candidates, or other significant recruiting difficulty.
> (2) A position is critical to accomplish the organization's mission or to complete a specific project or initiative.
> (3) An annuitant has unique or specialized skills or unusual qualifications not generally available…
> c. Appointment of annuitants shall be consistent with all applicable laws and regulations including merit system principles.
> d. Reemployed annuitants shall continue to **receive full annuity and salary** upon appointment and shall not be considered employees for the purposes of subchapter III of chapter 83…"

### A. U.S. Army - SIGIR and the U. S. Department of State Failed to Request OPM's Approval for the Waiver of the Dual Compensation Rules

The Director of OPM and Agencies may waive the applications of the rules surrounding reemployed annuitants—and the offset to pay based on the continued annuity —"on a case-by-case basis for employees in position for which there is an exceptional difficulty in recruiting or retaining a qualified employee."

The Agencies had authority and failed to request a waiver.

According to 5 CFR § 553.201 the U.S. Army and Department of state, because they were experiencing difficulties in recruitment and offered dual compensation had an ethical, moral and perhaps legal duty to request a waiver of the dual compensation rules: which they did not do.

"5 CFR § 553.201 Requesting OPM approval for reemployment without reduction or termination of annuity in individual cases.

(a) **Request by agency head**. The head of an agency may request OPM to approve individual exceptions on a case-by-case basis to meet temporary hiring needs based on an emergency or other unusual circumstances or when the agency has encountered exceptional difficulty in recruiting or retaining a qualified candidate for a particular position.". …

(d) **Requests based on severe recruiting difficulty**. Generally, requests for exception will be based on exceptional difficulty in recruiting a qualified candidate for a particular position."

Both agencies were negligent in failing to request a waiver of the Dual Compensation policy when the agencies were experiencing the difficulties in recruitment of Iraq positions.

B. **Agencies Failed to Provide Required Guidance that Receiving Dual Compensation Would Result in Service Not being Creditable.**

Both agencies when processing application documents, gave limited, sometimes one sentence explanations to forms requiring signatures. No guidance or explanation or any reference or statements were made to Plaintiff that his service would not be creditable thwarting 5 years of consecutive service necessary to recalculate Plaintiff's annuity.

The requirement to give guidance is stated in Federal regulations and DOD Policies.:

"**To annuitant.** The agency should advise the annuitant in writing, generally, of the effect reemployment has on annuitant status and/or the continued receipt of annuity, the possible, **future retirement benefits** that may be payable to an annuitant on the basis of reemployment, and, for CSRS annuitants, whether the annuitant may elect to have retirement deductions withheld from his or her basic pay"
Title 5 CFR Chapter I Subchapter B Part 837 Reemployment of Annuitants §.103 Notice.(b),"

"4. DOCUMENTATION REQUIREMENTS. Supporting human resources offices

shall[4]: …advise annuitants of the impact of reemployment in the Department of Defense… **They shall not be eligible for retirement contributions,** participation in the Thrift Savings Plan**, or supplemental or redetermined annuity for the reemployment period.**"[5]
DoDI 1400.25-V300, December 10, 2008,7 ENCLOSURE 2. PROCEDURES,

"(a) Each agency is responsible for notifying its employees of the opportunity to make an election under this part and for determining if an employee who wishes to make an election under subparts B[6] and D of this part is qualified to do so, and for counseling employees in accordance with guidance issued by OPM." § 847.105 Agency responsibilities"

Pursuant to 5 C.F.R. at § 847.302[7] both SIGIR and Department of State were required to notify Plaintiff of the "opportunity to elect to continue retirement coverage."

"§ 847.302 Notice of election rights.
The employing agency must provide notice to all eligible employees of the opportunity to elect to continue retirement coverage under subpart D of this part. Failure to provide notice to the employee is justification for waiving the time limit under § 847.304."

Again 5 CFR § 847.104 states required guidance for agencies to notify employees electing retirement accounts..

"(a)OPM will issue guidance to employing agencies to use when notifying their employees about the opportunity to make an election under this part and for counseling employees in connection with the election."

Here, the agencies failed, Pursuant to 5 C.F.R. §847.302, and C.F.R. §842.305 to notify Plaintiff of the opportunity to elect these retirement options. Between 2006 and 2009 neither agency "provided guidance" about retirement contributions, as required,. Instead the agencies unilaterally applied retirement funds to FICA and did not make contributions to the correct retirement account.

**Agencies Provided No Evidence or Documentation Any Guidance Was Given**.

Inquiries and search of military and civilian personnel failed to reveal any documents or

---

[4] DoDI 1400.25-V300, December 10, 2008,7 ENCLOSURE 2. PROCEDURES 1. GENERAL INFORMATION
[5] DoDI 1400.25-V300, December 10, 2008,7 ENCLOSURE 2. PROCEDURES, 4. DOCUMENTATION REQUIREMENTS pg. 9.
[6] Subparts B refers to : 5 CFR Subpart B - Subpart B—Elections to Continue Retirement Coverage After a Qualifying Move
[7]

9

references to such notices or guidance given to Plaintiff.

An official of military record for the U.S. Army said records for SIGIR, if they existed, no longer exists, because SIGIR no longer exists and records were destroyed. I requested and obtained all records from the National Records Center for SIGIR and the US Department of State. There were no documents that I signed or showed I was notified or offered guidance from these agencies concerning contributions to retirement funds or dual compensation

## C. Retirement Contributions to the Correct Retirement Account Could be Made if Required.

A waiver of the 30 day time limit (5 CFR at section 842.305) to make contributions is justified in this instance because the agency's "fail(ure)" to provide notice to the employee in 5 CFR, § 847.304 (b).

> "(b) Because Public Law 104-106 requires that eligible employees receive timely notice of the opportunity to make the election under subpart D of this part, and that employees must be counseled concerning the election opportunity, the employing agency must waive the time limit in paragraph (a) of this section in the event that an employee did not receive such notice or counselling."
>
> Also the 30 day deposit rule supports the action to make payments if necessary:
>
> **§842.305 Deposits for civilian service and waiver of 30 day time limit.**
> Eligibility – current and former employees or Members. An employee or Member subject to FERS and a former employee or Member who is entitled to an annuity may make a deposit for civilian service described under paragraphs (a)(2) and (a)(3) of § 842.304 upon application to OPM in a form prescribed by OPM. A deposit for civilian service cannot be made later than 30 days after the first regular monthly payment is defined in § 842.602.
> Other Code of Federal Regulations supporting a payment to the correct retirement account was possible: 5 C.F.R. § 837.504(a)(i)-(iv), CFR 5, § 847.105, and 5 U.S.C. § 8334(c) (Exhibit A)

Therefore deposits could now be made or transferred from FICA to those retirement plans so a full recalculation of the annuity may be performed.

## VI. ARGUMENT AGAINST OPM

The Director of OPM may waive the applications of the rules surrounding reemployed annuitants—and the offset to pay based on the continued annuity

> "The Director of the Office of Personnel Management may, at the request of the head of an Executive agency..

10

> —"waive the application of the preceding provision of this section on a case-by-case basis for employees in position for which there is exceptional difficulty in recruiting or retaining a qualified employee."

The Director may also grant authority to the head of an agency to make that waiver for temporary employees, but only so long as:

> "the authority is necessary due to an emergency involving a direct threat to life or property or other unusual circumstances. 5 U.S.C. § 8344(i)(1)

OPM in Plaintiff's claims, did not accept allegations as true which they were required to accept[8]. There was no evidence to the contrary, that the agencies provided guidance. OPM only stated it must have been reasonable that Guidance was given. Therefore, since the allegations stand as true, ruling in favor of plaintiff was and is warranted.

## Claim 1. Economic Damages
## Claim 2. Negligence

The U.S. Army-SIGIR and Department of State negligently or intentional failed to provide guidance on dual compensation and selection of appropriate retirement accounts. Because of this Plaintiff suffered a loss of annuity income. Because of this loss of income, Plaintiff was unable to meet the mortgage payments and was forced to sell his home.

# Claim, 3 Unfair and deceptive hiring practices

Unfair and Deceptive Trades Practices in Violation of the District of Columbia Consumer Protection Procedures Act (All Defendants)

## VIII. CONCLUSION

The U.S. Army - SIGIR, and the U.S. Department of State were having difficulties in meeting their staffing requirements for Iraq. Intentionally or negligently, failed in their duty to

---

[8] Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true", (Ashcroft v. Iqbal (No. 07-1015) 490 F. 3d 143.

provide guidance to Plaintiff's that service in Iraq would not be credible service and failed to provide guidance in the selection of retirement accounts. Stating a word or two, in a multitude of forms, to a reasonable person, would not constitute "Guidance"

Plaintiff only had 1 year and 2 months remaining to complete the required 5 years for recalculation of his annuity. Because Plaintiff was never advised, as required by the U.S. Code, CFR Regulations, DOD instructions, and OPM instructions, the agencies unilaterally assigned unacceptable retirement accounts. This resulted in the years of service in Iraq, were not considered creditable service.

Therefore because of the lack of actions and the actions of the agencies, Plaintiff suffered economic damages.

## IX. PRAYER FOR RELIEF

Plaintiff has been unduly prejudiced and harmed. and suffered economic damages. These damages include:

Loss of the adjusted annuity income for 15 years

Loss of earning capacity to invest in his hostel business.

Loss of his home because of failure make mortgage payments

Therefore, Plaintiff request an equitable adjustment, to be made whole, in the amount of $450,000.00.

A jury trial is demanded.

I, Ronald Bonfilio, Plaintiff, do hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully Submitted,
/s/Ronald Bonfilio, Pro Se
14815 Ashford Springs Lane
Humble TX 77396

(518)423 5461
ronjoebon@gmail.com